ENVIRONMENTAL ADVOCATES
JODENE ISAACS, ESQ. (SBN 226895)
5135 Anza Street
San Francisco, CA 94121
Telephone: (415) 533-3376
Facsimile: (415) 358-5695
jisaacs@enviroadvocates.com

ECOLOGY LAW CENTER
FREDRIC EVENSON, ESQ. (SBN 198059)
P.O. Box 1000
Santa Cruz, CA 95061
Telephone: (831) 454-8216
evenson@ecologylaw.com

Attorneys for Plaintiff
ECOLOGICAL RIGHTS FOUNDATION

GREBEN & ASSOCIATES
JAN A. GREBEN, ESQ. (SBN 103464)
125 E. De La Guerra Street, Suite 203
Santa Barbara, California, 93101
Telephone: (805) 963-9090
Email: jan@grebenlaw.com

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ECOLOGICAL RIGHTS FOUNDATION, | CASE NO. 1:16-cv-07401-HSG |
| Plaintiff, | NOTICE OF SETTLEMENT; [PROPOSED] ORDER |
| v. | |
| SCHMIDBAUER LUMBER, INC. and SCHMIDBAUER BUILDING SUPPLY, LLC, | |
| Defendants. | |

**TO THE CLERK OF THE COURT, ANY INTERESTED PARTIES, AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that Plaintiff, Ecological Rights Foundation, and Defendant, Schmidbauer Lumber, Inc. (collectively, the "Parties") have reached settlement in the above-captioned case and have executed a [Proposed] Consent Decree which is attached as Exhibit 1. Final settlement is contingent upon the federal agencies' 45-day review period of the [Proposed] Consent Decree described below.

PLEASE TAKE FURTHER NOTICE that, in accordance with federal law, no judgment disposing of this action may be entered prior to forty-five (45) days following the receipt of the proposed settlement by the United States Department of Justice ("DOJ") and the national and Region IX offices of the United States Environmental Protection Agency ("federal agencies"). (*See* 33 U.S.C. §1365(c); 40 C.F.R. § 135.5.) Plaintiff will provide the [Proposed] Consent Decree to the federal agencies for review. Upon notice of non-objection by DOJ to this Court, the Parties request that the Court execute the Consent Decree and dismiss Plaintiff's claims with prejudice. Should the federal agencies object to the settlement, or the Parties cannot informally resolve any concerns raised by the federal agencies, a Notice that the settlement is null and void will be submitted.

NOW THEREFORE, for the reasons set forth above, the Parties hereby stipulate, and respectfully request, that the Court enter an order vacating all further proceedings in this matter and enter the proposed consent agreement (attached as Exhibit 1) as the final judgment in this case following the 45 day review period required by 40 C.F.R. § 135.5.

RESPECTFULLY SUBMITTED,

DATED: June 5, 2017                    By: /s/ Jodene Isaacs
                                       Jodene Isaacs, Attorneys for Plaintiff
                                       ECOLOGICAL RIGHTS FOUNDATION

DATED:  June 5, 2017                    By: /s/ Jan Greben_____
                                       Jan Greben, Attorney for Defendants
                                       SCHMIDBAUER LUMBER, INC. and
                                       SCHMIDBAUER BUILDING SUPPLY, LLC

## PURSUANT TO STIPULATION, IT IS SO ORDERED.

DATED:  ___6/14/2017_____        _____
                                  Hon. Judge Haywood S. Gilliam, Jr.

# EXHIBIT 1

Christopher Sproul (State Bar No. 126398)
Jodene Isaacs (State Bar No. 226895)
ENVIRONMENTAL ADVOCATES
5135 Anza Street
San Francisco, California 94121
Telephone: (415) 533-3376, (510) 847-3467
Facsimile: (415) 358-5695
Email: csproul@enviroadvocates.com
Email: jisaacs@enviroadvocates.com

Fredric Evenson (State Bar No. 198059)
ECOLOGY LAW CENTER
P.O. Box 1000
Santa Cruz, CA 95061
Telephone: (831) 454-8216
Email: evenson@ecologylaw.com

Attorneys for Plaintiff
ECOLOGICAL RIGHTS FOUNDATION

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ECOLOGICAL RIGHTS FOUNDATION,<br><br>    Plaintiff,<br><br>    v.<br><br>SCHMIDBAUER LUMBER, INC. and<br>SCHMIDBAUER BUILDING SUPPLY,<br><br>    Defendant. | Civil Case No. 16-cv-07401-HSG<br><br>[PROPOSED] CONSENT DECREE<br><br>(Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 et. seq.) |

1

**WHEREAS**, Plaintiff Ecological Rights Foundation ("ERF") is a non-profit public benefit corporation dedicated to the preservation, protection, and restoration of the environment, the wildlife and the natural resources of all waters of California, including Humboldt Bay;

**WHEREAS**, Plaintiff alleges that Defendants Schmidbauer Lumber, Inc. is owner and operator of the lumber mill facility located at 1099 West Waterfront Drive, Eureka, California (hereinafter "the Facility") or have caused pollutants to be discharged to waters of the United States from the Facility;

**WHEREAS**, Plaintiff alleges storm water flows off-site from the Facility at five different discharge points or outfalls; each outfall discharges into the City of Eureka's Municipal Separate Storm Sewer System ("MS4") which discharges to Humboldt Bay;

**WHEREAS,** discharges from the Facility are regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board] ("Storm Water Permit")[1] and the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.* ("Clean Water Act" or "CWA");

**WHEREAS,** on October 10, 2016, ERF provided notice of violations of the CWA by Schmidbauer Lumber, Inc. and Schmidbauer Building Supply, LLC and of ERF's intention to file suit against these entities (collectively "Defendants" or "Schmidbauer.") Notice was provided to the Administrator of the United States Environmental Protection Agency ("EPA"); the Regional Administrator of EPA Region IX; the Executive Director of the California State Water Resources Control Board ("State Board"); the Executive Officer of the California Regional Water Quality Control Board, Region 1 ("Regional Board"); the U.S. Attorney General, and the Defendants ("Notice Letter") as required by the CWA, 33 U.S.C. § 1365(b)(1)(A);

---

1 The Storm Water Permit was adopted by the State Board through Order No. 2014-0057-DWQ which went into effect July 1, 2015. Industrial storm water discharges that occurred prior to that date were subject to Order No. 97-03-DWQ.

**WHEREAS**, on December 30, 2016, Plaintiff filed a complaint against Schmidbauer Lumber, Inc. and Schmidbauer Building Supply, LLC, in the United States District Court, Northern District of California (Case No. 16-07401-NJV) alleging ongoing violations of the CWA (hereinafter "Complaint");

**WHEREAS**, Schmidbauer denies all allegations in the Notice Letter and Complaint, and maintain that the operations at the Facility are in compliance with the requirements of the CWA and the Storm Water Permit;

**WHEREAS**, this Consent Decree shall be submitted to the EPA and United States Department of Justice ("DOJ") for the statutory review period pursuant to 33 U.S.C. §1365(c) and 40 C.F.R. § 135.5;

**WHEREAS**, Plaintiff and Defendants that it is in the Parties' mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the Complaint without further proceedings and without any admission of liability on the part of the Defendants;

**WHEREAS**, all actions taken by Defendants pursuant to this Consent Decree shall be made in compliance with all applicable Federal and State laws and local rules and regulations; and

**WHEREAS**, Plaintiff agrees that Schmidbauer Building Supply, LLC is not a party to this Consent Decree and will be dismissed from the complaint.

**NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

**I.    GENERAL OBJECTIVES**

1.    The objectives of this Consent Decree are:

   a.    To ensure that Schmidbauer continues to improve storm water quality as necessary to comply with the Storm Water Permit;

   b.    To ensure that Schmidbauer continues to use, implement, and improve ways, means, and methods to prevent or reduce the discharge of pollutants in storm water runoff from the

Facility; and

c.  To further the goals and objectives of the CWA.

2.  Unless otherwise expressly defined herein, terms used in this Consent Decree which are defined in the CWA or in regulations or rules promulgated under the CWA have the meaning assigned to them in the statutes or regulations or rules. Whenever terms listed below are used in this Consent Decree, the following definitions apply:

"Consent Decree" means this Consent Decree and any attachments or documents incorporated by reference.

"Day" means a calendar day. In computing any period of time under this Consent Decree, where the last day of such period is a Saturday, Sunday, or Federal or State Holiday, the period runs until the close of business on the next day that is not a Saturday, Sunday, or Federal or State Holiday.

"Design Storm" means the volume of runoff produced from an 85th percentile 24-hour storm event, as determined from the National Oceanic and Atmospheric Administration's Eureka, California rainfall records.

"Dry Season" means the five-month period beginning May 1st of any given year and ending September 30th of the same year.

"Effective Date" means the effective date of this Consent Decree, which shall be the last day for EPA and DOJ to comment on the Consent Decree, i.e., the 45th day following these agencies' receipt of the Consent Decree, or the date on which these agencies provide notice that they require no further review, whichever occurs earlier.

"Execution Date" means the date on which this Consent Decree is executed by the Plaintiff and Defendant, i.e., June 1, 2017.

"Wet Season" means the seven-month period beginning October 1st of any given year and ending April 30th of the following year.

## II.    JURISDICTION AND VENUE

3.  This Court has jurisdiction over the subject matter of the claims asserted by Plaintiff

pursuant to CWA section 505(a), 33 U.S.C. § 1365(a), 28 U.S.C. §§ 1331, 1355, and 1367. Venue is proper in this judicial district pursuant to section CWA §§ 309(b), 505(c), 33 U.S.C. §§ 1319(b), 1365(c), and 28 U.S.C. §§ 1391(b) and (c). The parties waive any and all objections that they may have to the Court's jurisdiction to enter and enforce this Consent Decree.

4.      The Complaint states claims upon which relief may be granted pursuant to Section 505 of the Clean Water Act, 33 U.S.C. § 1365.

5.      Plaintiff has standing to bring this action.

**III.     EFFECT OF CONSENT DECREE/RELEASE OF CLAIMS**

6.      Plaintiff does not, by its consent to this Consent Decree, warrant or aver in any manner that Schmidbauer's compliance with this Consent Decree will constitute or result in compliance with any federal or state law or regulation.

7.      This Consent Decree is neither a permit nor a modification of existing permits under any federal, state, or local law and in no way relieves Schmidbauer of its responsibilities to comply with all applicable federal, state and local laws and regulations.

8.      Compliance with this Consent Decree, including all monetary payments due under this Consent Decree (including but not limited to the payment of any stipulated payments) and the completion of all storm water quality improvement measures required pursuant to this Consent Decree resolves Plaintiff's civil claims for the violations alleged against Schmidbauer in this Action.

9.      <u>Plaintiff's Release</u>: Upon the Effective Date of this Consent Decree, Plaintiff hereby releases Schmidbauer, and its partners and its and their officers, directors, employees, successors and assigns, from all CWA violations alleged in the Complaint up to and including the Effective Date of this Consent Decree. Except for claims for Schmidbauer's failure to comply with this Consent Decree, Plaintiff further releases Schmidbauer, and its partners and its and their officers, directors, employees, successors and assigns, from all claims pertaining to alleged violations of the CWA that may occur due to discharges of storm water from the

Facility between the Effective Date and the termination of this Consent Decree.

10. <u>Defendant's Release</u>: Upon the Effective Date of this Consent Decree, Schmidbauer and its general partners hereby release Plaintiff and its officers, directors, employees, members, attorneys, and each of their successors and assigns, from, and waives all claims which arise from or pertain to this action, including all claims for fees (including fees of attorneys, experts, and others), costs, expenses or any other sum incurred or claimed or which could have been claimed for matters associated with or related to Plaintiff's Notice Letter and Complaint up to the Effective Date.

## IV. APPLICABILITY

11. The provisions of this Consent Decree apply to and bind Plaintiff and Schmidbauer (collectively, "Parties"), including any successors or assigns. The Parties certify that their undersigned representatives are fully authorized to enter into this Consent Decree, to execute it on behalf of the Parties, and to legally bind the Parties to its terms.

12. The Parties agree to be bound by this Consent Decree and not to contest its validity in any subsequent proceeding to implement or enforce its terms. By entering into this Consent Decree, Schmidbauer does not admit liability for any purpose as to any allegation or matter arising out of the Action. Nothing in this Consent Decree shall constitute an admission of any fact or a waiver of any right or defense unless specifically set forth herein.

13. No change in ownership or corporate or other legal status of Schmidbauer or any transfer of Schmidbauer's assets or liabilities shall in any way alter the responsibilities of Schmidbauer or any of its successors or assigns thereof, under this Consent Decree. In any action to enforce this Consent Decree, Schmidbauer shall not raise as a defense the failure by any of its agents, servants, contractors, employees, successors or assigns to take actions necessary to comply with this Consent Decree, unless such actions were prevented by a force majeure.

14. Except as otherwise provided in this Part, the sale or transfer of ownership or operation of any portion of either Facility does not relieve Schmidbauer of its obligations under this Consent Decree. Not later than thirty (30) days prior to sale or transfer of ownership or

operation of any portion of either Facility, Schmidbauer shall give written notice of this Consent Decree to each purchaser or successor in interest. Schmidbauer also shall give written notification to Plaintiff, in accordance with Part XII (NOTICES AND SUBMISSIONS), of the anticipated sale or transfer of ownership or operation of the Facility at least thirty (30) days prior to the scheduled date of such sale or transfer and may seek from the Court a modification of this Decree that would transfer responsibility for compliance with some or all of these provisions to its successor. The Court shall grant such request if the successor is ready, willing and able to fully implement obligations the successor would assume under this Consent Decree.

## V.   STORM WATER QUALITY IMPROVEMENT MEASURES

### A. Site Mapping

15.   <u>Site Mapping</u>: By August 15, 2017, Schmidbauer shall update as necessary the Site Map for the Facility's SWPPP. The Site Map shall clearly identify the property boundaries, ground type (e.g., pervious or impervious) on all portions of the Facility; berms, dikes, walls and other structures controlling the flow of surface water, components of the Facility storm water conveyance system, including but not limited to storm water pipes, drop inlets, any storm water storage or treatment infrastructure (as well is the capacity of such infrastructure) and all other physical structures or items relevant under this Consent Decree. The Site Map shall further indicate the direction and pattern of storm water flows at and off the Facility.

16.   <u>Designated Discharge Points</u>:  By August 15, 2017, to the extent not already implemented, Schmidbauer shall identify on the Site Map every location at which storm water and non-storm water from an industrial area is known to be discharged or which may potentially be discharged, e.g.,  driveways ("Designated Discharge Points or Designated Discharge Locations"). Each Designated Discharge Point or Discharge Location shall be numbered and clearly labeled on the Site Map.

17.   <u>Designation of Storage Areas</u>:  To the extent not already implemented, the outdoor storage areas at the Facility where materials used at the Facility are stored ("Material Storage

Areas") shall be designated on the Facility's Site Map.

18.   Pollutant Generating Activities:  The Site Map shall describe include all of the information required by the Section X.E.3 of the 2015 Industrial Stormwater Permit. The SWPPP shall further describe industrial activities that generate wood waste, saw dust, particulates or other pollutants that may be deposited within the Facility's boundaries and identify their discharge locations and the characteristics of such wood waste, saw dust, particulate and other pollutants; and a description of the primary areas of the Facility where wood waste, saw dust, particulate and other pollutants would settle.

**B.   Storm Water Pollution Control Measures**

19.   In addition to maintaining the current BMPs at the Facility, Schmidbauer shall develop and implement the additional BMPs identified below for Areas 1 through Area 7 as identified on Schmidbauer's June 15, 2015 SWPPP, as well as any other BMPs necessary to comply with the provisions of this Consent Decree and the Storm Water Permit. Specifically, Schmidbauer shall develop and implement BMPs with the goal of preventing and/or reducing the level of pollutants in storm water discharged from the Facility below the Tier Two Levels in Table 1, attached as Exhibit 1 to this Consent Decree, and to use best efforts to reduce the levels of pollutants in storm water discharges below the Tier One Levels in Table 1. An exceedance of a Tier One or Tier Two Level, by itself, shall not be considered a violation of this Consent Decree. The minimum BMPs to be developed and implemented for each process area as designated on the SWPPP Map are set forth below

20.   By August 15, 2017, Schmidbauer shall deploy media filter inserts that are designed for reducing pollutants, including metals, in stormwater discharges within Area 1 and Area 3 that shall be replaced at the beginning of each Wet Season (i.e., by October 1) and every two months or as deemed necessary based on monitoring data during the Wet Season that this Consent Decree is in effect.

21.   By August 15, 2017, Schmidbauer shall inspect the perimeter of each Facility and implement such measures as are necessary to prevent water from discharging from the Facility

perimeter at any location other than Designated Discharge Locations.

22. By August 15, 2017, Schmidbauer shall use meteorological data from the National Oceanic and Atmospheric Administration's Eureka, California Woodley Island weather station in designing an active treatment system and monitoring rain events

23. Schmidbauer shall operate the Facility such that activities that generate wood waste, saw dust, fine particulate matter, or other materials that can be tracked or entrained in storm water discharging from the Facility are principally conducted within designated Industrial Activity Areas shown on the Site Map prepared pursuant to Paragraphs 15 through 18.

24. Schmidbauer shall regularly monitor and maintain the storm water conveyance system and treatment or retention structures at the Facility in a manner that to control and reduce wood waste, debris and materials not related to the control and treatment of storm water (*e.g*., wood pulp, sawdust, metals, and other debris).

25. Starting July 15, 2017 and in following years during from June 1 to September 30 of each year that this Consent Decree is in effect, Schmidbauer shall cover each storm water drop inlet with a solid material that will prevent wood waste, saw dust and solids from collecting in the inlet. These covers may be removed prior to the start of any forecasted precipitation with a likelihood of occurrence of 50% or greater as determined by the NOAA forecast for the Eureka area available at http://www.wrh.noaa.gov/eka/.

**C. Site Housekeeping Plan**

26. By August 15, 2017, Schmidbauer shall modify the BMPs currently contained in the Facility's SWPPPs as necessary to ensure that the sweeping and cleaning actions deployed at the Facility, in conjunction with other appropriate BMPs, are sufficient to reduce the potential for pollutants to become entrained in storm water flows, to prevent pollutants from being blown off the Facility, to keep paved areas of the Facility as clean as practicable, and to prevent pollutants from being tracked off the Facility onto surface streets. Schmidbauer's sweeping and cleaning BMPs shall be specified in detail in the Facility's Site Housekeeping Plan and shall specifically include at least the following measures: (a) identification of (i) areas

where mechanical sweeping (or scraping) is feasible by mechanical sweepers, mechanical brooms (such as mower style vacuum sweepers), or backhoe equipped with scraper, (ii) areas where manual sweeping only, as needed, is feasible, and (iii) areas where sweeping is not feasible (such as unpaved areas, or under piles of materials that are not reasonably movable), (b) Wet Season and Dry Season schedules for mechanical and manual sweeping of areas identified as appropriate for daily sweeping, except during periods of rain, (c) Wet Season and Dry Season schedules for sweeping of the public streets and curbs, where accessible, permitted and/or necessary to prevent tracking, with a sweeper near the Facility entrances, (d) triggers for more frequent ad hoc sweeping or cleaning such as visual accumulation of wood waste, saw dust or debris, (e) a schedule for the annual inspection and comprehensive site cleaning, (f) sweeping of curbs downstream of the Facility and small berms in driveways as needed based on observations during Facility inspections to keep materials from lodging in these areas where they can be picked up by storm water and deposited into area storm drains, and (g) specification that Schmidbauer will collect and dispose of all wastes generated during Facility cleaning and sweeping in a manner that complies with all local, state, and federal laws.

27. <u>Site Housekeeping Log</u>:  Schmidbauer shall keep a log or checklist, as appropriate, of the sweeping and any other site cleaning activity performed which identifies the employee and/or contractor who conducted the sweeping or cleaning, the location of the sweeping or cleaning, and the date of the sweeping or cleaning activities. The form for this log or checklist shall be adopted by Schmidbauer as part of the Site Housekeeping Plan referred to in the preceding paragraphs. Schmidbauer shall direct employees and/or contractors to accurately complete this form for those sweeping and cleaning actions specified in such log in accordance with the Site Housekeeping Plan. Schmidbauer shall make the sweeping and cleaning log or checklist available for inspection by Plaintiff at the site inspection authorized herein or otherwise with five (5) business days advance request by Plaintiff.

28. Plaintiff shall have twenty-one (24) days from receipt of the Site Housekeeping Plan, provided in the modified SWPPP pursuant to Paragraph 64 to propose any changes or

modification to be added to meet the intended goal of preventing contaminants from being moved around and offsite from the Facility, reducing pollutants in storm water flows, keeping all paved areas of the Facility clean and visible, and preventing pollutants from being tracked off the Facility onto surface streets. Within 14 days of receiving Plaintiff's comments on the Site Housekeeping Plan, Schmidbauer shall make all requested changes or provide Plaintiffs with a written explanation if Schmidbauer declines to implement or develop any of Plaintiff's recommendations.

**D.      Structural BMPs**

29.     <u>Updated ERA Level 1 Report</u>: By August 15, 2017, Schmidbauer shall prepare and provide to Plaintiff its Updated Exceedance Response Action ("ERA") Level 1 Report ("Updated Plan") for developing BMPs at the Facility capable of providing treatment to all storm water discharges to a level commensurate with Best Available Technology Economically Achievable ("BAT") and the Best Conventional Pollutant Control Technology ("BCT").

30.     The Updated Plan shall include the engineering and design plans necessary for conversion of the existing drainage swales located in Area 5 and Area 6 into bio-swale as described in Schmidbauer's Exceedance Response Action ("ERA") Level 1 Report[2] as determined through an engineering evaluation of site hydrology, lithology, and other relevant factors.

31.     The Updated Plan shall also include engineer approved calculations of the design storm standards for the volume of water generated in Area 5 and Area 6 that are based on historical rain data from the NOAA weather station in Eureka.

32.     In addition to the bio-swale improvements, the Updated Plan shall also include BMPs aimed at reducing woody source materials and other contaminants from contacting storm water to address the following areas:

       a. Schmidbauer shall develop BMPs for exposure minimization of all wash water that is

---

[2] Schmidbauer filed this report with the State Water Resources Control Board on December 30, 2016.

generated but not covered or fully contained.

b.  Schmidbauer shall identify all the sources of pollutants, including any *metals, throughout the Facility and develop BMPs to minimize stormwater contact with these sources.

c.  Schmidbauer shall develop BMPs to address solids from the conveyor belts used in Area 6.

d.  Schmidbauer shall develop BMPs to address solids from the debarker and immediate area surrounding it and address potential storm water pollutants from this area.

33.    Updated Plan Implementation: Schmidbauer shall implement the Updated Plan, as revised as, no later than November 1, 2017 unless Schmidbauer provides good cause to Plaintiff for the delay in construction. Should Schmidbauer adequately demonstrate good cause for a delay, Schmidbauer shall implement the updated Plan as soon as practicable given any permitting requirements or constraints. Schmidbauer shall thereafter properly operate and maintain the BMPs described in the Plan for the life of the Consent Decree. Any disputes as to the adequacy of good cause for delay shall be resolved pursuant to the Dispute Resolution provisions of Part XI (DISPUTE RESOLUTION).

34.    ERA Level 2 Action Plan: The storm water sampling results collected during the 2017-2018 Wet Season shall be considered during the evaluation of additional BMP improvements. If discharges contain constituents in discharges from the Facility at levels exceeding the Numeric Action Levels (NALs) or the triggers discussed below in Paragraph 39 during the 2017-2018 Wet Season, Schmidbauer shall prepare and provide to Plaintiff an Exceedance Response Action ("ERA") Level 2 Action Plan for the purpose of providing treatment for storm water discharges to a level commensurate with Best Available Technology Economically Achievable ("BAT") and the Best Conventional Pollutant Control Technology ("BCT"). The objective of the ERA Level 2 Action Plan shall be to obtain sufficient storm water storage and/or treatment capacity so that all storm water potentially containing chemicals/constituents of concern is effectively treated to reduce pollutants prior to discharge in any storm that does

11

not exceed the Design Storm (*i.e.*, storm water discharges should only bypass the treatment system during storm events that exceed the Design Storm).

35. The ERA Level 2 Action Plan will be submitted by September 1 following the reported year during which the NAL/or trigger exceedance(s) occurred.

36. The ERA Level 2 Action Plan shall include some or all of the following components, or a combination thereof, as determined through an engineering evaluation of site hydrology, lithology and other relevant factors:

    a. Installing holding tanks or other forms of storm water storage generated in at least Area 5 and Area 6 to allow for additional water retention and treatment prior to storm water reaching the treatment system.

    b. Diverting all storm water from Area 5 design storm that is currently directed to the inlet at SW-2 to instead flow to outfall SW-4.

    c. Diverting stormwater from other areas, as applicable, of the Facility to outfall SW-4

    d. Designing and installing an active treatment system that is capable of treating stormwater discharges from at least Area 5 and Area 6, and consider treatment of Area 7, to a level commensurate with BAT and BCT.

37. <u>ERA Level 2 Action Plan Review:</u> Plaintiff shall have twenty-nine (29) days upon receipt of Schmidbauer's ERA Level 2 Action Plan, described in Paragraphs Paragraphs 34 through 36, to provide Schmidbauer with comments. Within fifteen (15) days of Schmidbauer's receipt of Plaintiff's comments on the <u>ERA Level 2 Action Plan</u> Plan, Schmidbauer shall accept and incorporate Plaintiff's comments into the Plan, or shall provide Plaintiff with a written explanation if Schmidbauer declines to develop and/or implement any of Plaintiff's recommendations. Any disputes as to the adequacy of the <u>ERA Level 2 Action</u> Plan shall be resolved pursuant to the Dispute Resolution provisions of Part XI (DISPUTE RESOLUTION).

38. <u>ERA Level 2 ERA Plan Implementation:</u> Schmidbauer shall implement the Level 2 ERA Action Plan, as revised, by the end of the 2018-2019 Wet Season (i.e., July 31, 2019) unless Schmidbauer provides good cause to Plaintiff for the delay in construction. Schmidbauer shall

implement the Level 2 ERA Action Plan as soon as practicable given any permitting requirements or constraints Schmidbauer shall thereafter properly operate and maintain the treatment and/or storm water retention system for the life of the Consent Decree. Any disputes as to the adequacy of good cause for delay shall be resolved pursuant to the Dispute Resolution provisions of Part XI (DISPUTE RESOLUTION).

**E. Additional Reduction of Pollutants in Discharges**

39.     ERA <u>Level 1 Evaluation Plan for Table 1 Exceedances</u>: Schmidbauer shall submit an ERA Level 1 Evaluation for reducing the level of pollutants in storm water discharges from the Facility in any of the following circumstances:

a.    If the average of all storm water analytical results in a given wet season for individual pollutant(s) exceeds any of the applicable Annual NALs as set forth in Table 2 of the Permit;

b.   If any storm water sample contains a single pollutant at a concentration that exceeds an Instantaneous NAL as set forth in Table 2 of the Permit and is not currently being addressed by another ERA Plan; or

c.   If any single storm water sample from an individual outfall exceeds the Annual NAL for COD or the CTR value for Zinc set forth in Table 1 below.

In calculating the average of storm water sampling results for a particular pollutant, Schmidbauer shall average only those results collected from a single outfall (**i.e., all storm water outfalls will be evaluated separately**). An exceedance of a Tier One or Tier Two level, by itself, shall not be considered a violation of this Consent Decree, the Storm Water Permit or the CWA.

40.     <u>ERA Level 1 Evaluation Plan Requirements</u>: Each ERA Level 1 Evaluation Plan submitted shall include at a minimum: (1) the identification of the contaminant(s) discharged in excess of the NALs, (2) an assessment of the source of each contaminant exceedance, (3) the identification of additional BMPs that will be implemented to reduce pollutant concentrations in the discharge, and (4) time schedules for implementation of the proposed BMPs. The time

schedule(s) for implementation shall ensure that all BMPs are implemented as soon as possible, but in no case later than November 15 (following the wet-weather season with the exceedance). The following BMPs should generally be evaluated as a means of reducing pollutant concentrations:

a. Hydraulic Controls: installation of additional berms or equivalent structural controls (if necessary to reduce or prevent storm water from flowing into or, other than through the engineered storm water conveyance system or storm water retention or treatment facilities).

b. Detention: additional on-site retention or infiltration of storm water to minimize storm water discharges (overall or from specific areas) or to detain storm water runoff for sufficient detention time so as to reduce pollutants in the discharge.

c. Visual "Track Off" To Public Streets: additional BMPs necessary to reduce or prevent visual "track off" of material from the Facility onto public streets.

d. Paving Additional Unpaved Areas: to the extent not already implemented by other sections of this Consent Decree, stabilizing appropriate portions of unpaved portions of the Facility where significant vehicle traffic occurs.

e. Treatment Systems: installing or improving treatment systems that would provide more effective treatment of storm water prior to discharge than currently installed systems, such as a fixed bed filter system or other improved filter system.

f. Evaluation of BMPs: replacing, rehabilitating, or eliminating existing BMPs, taking into account the age of the BMPs involved or employed, the engineering aspect of the application of various BMPs, and any adverse environmental impact of the BMPs.

g. Such other additional BMPs as Schmidbauer deems appropriate for evaluation.

41. For the ERA Level 1 Evaluation Plan that may be required after the 2017-2018 Wet Season, Schmidbauer may consider measures discussed in Paragraph 40(a) through 40(f) in the ERA Level 2 Action Plan.

42. ERA Level 1 Evaluation Plan Submittal: In any year that an ERA Evaluation Plan is required, Schmidbauer shall provide the ERA Evaluation to Plaintiff by October 1 following

14

the Wet Season for which exceedance was reported;

43. ERA Level 1 Evaluation Plan Review: Plaintiff shall have thirty (30) days upon receipt of Schmidbauer's Level 1 ERA Evaluation Plan to provide Schmidbauer with comments. Within thirty (30) days of Schmidbauer's receipt of Plaintiff's comments on the ERA Level 1 Evaluation Plan, Schmidbauer shall incorporate Plaintiff's comments of recommended additional BMPs into the Plan

44. ERA Level 1 Evaluation Plan Implementation: Level 1 ERA Report to be implemented before the following Wet Season that the exceedance(s) occurred, or shall provide Plaintiff with a written explanation if Schmidbauer refuses to develop and/or implement any of Plaintiff's recommended additional BMPs. Disputes regarding the adequacy of a particular BMP shall not impact the schedule for implementing any other BMP set forth in the ERA Level 1Evaluation Plan. Any disputes as to the adequacy of the ERA Level 1 Evaluation Plan shall be resolved pursuant to the Dispute Resolution provisions of Part XI.

**VI. SAMPLING, MONITORING, INSPECTION & REPORTING**

**A. Sampling Program**

45. Schmidbauer shall collect storm water discharge samples from each Discharge Point at the Facility according to the following sampling schedule:

a. During the first, second, and third year of this Consent Decree, and except as set forth below in this paragraph, Schmidbauer shall collect four storm water samples per year from each Discharge Point at the Facility. If four consecutive samples from each of the Discharge Points result in pollutant levels below the NALs set forth in Table 2 of the Permit for any parameter sampled, Schmidbauer need not conduct additional sampling for such parameter unless otherwise required by the Storm Water Permit.

b. Schmidbauer shall analyze each storm water sample collected for each of the parameters listed on the Table 1. Should operations change at the Facility, Schmidbauer shall conduct sampling for any additional toxic priority pollutants listed in 40 C.F.R. § 131.38 likely to be present in Schmidbauer's storm water discharges as a result of the

changed operations.

c. Where Schmidbauer discharges storm water into a storm drain inlet or catch basin, Schmidbauer may choose to collect a sample below any insert or treatment system. If Schmidbauer chooses not to collect a post-filtration or post-treatment sample, the quality of storm water samples entering a storm drain inlet or catch basin containing a fabric insert shall be considered the same as a sample collected below the insert.

46. Qualifying sampling events shall be preceded by at least 48 hours without storm water discharges.

47. If Schmidbauer does not collect the required number of samples from the designated sampling locations due to lack of discharge, Schmidbauer shall explain in its Annual Report or any ERA Action Plan required by this Consent Decree that rainfall was insufficient for collection of samples.

48. Schmidbauer shall deliver all storm water samples collected pursuant to this Decree to a California state certified environmental laboratory for analysis within the time needed for analysis within laboratory method allowable hold times. Schmidbauer shall direct the laboratory to conduct analysis sufficient to detect individual constituents at or below the Tier One and Tier Two Levels set forth in the attached Table 1.

49. Schmidbauer shall provide to Plaintiff complete results from Schmidbauer's sampling and analysis of storm water discharges to Plaintiff within fourteen (14) days of receipt of the laboratory report from each sampling event. Each time Schmidbauer receives sampling results, Schmidbauer shall provide Plaintiff with a chart in digital or hardcopy form that summarizes the results of all the samples and includes the Tier One and Tier Two values for comparison. The summary chart shall consistently present the sample summaries in milligrams per liter for all of the parameters for which concentration values are provided.

**B.  Visual Observations**

50. <u>Wet Weather Visual Observation</u>s: During the term of this Consent Decree, Schmidbauer shall conduct visual observations, during normal operating hours, at the point at which each

discharge crosses the property line, during one rain event per month that produce a discharge. During these rain events, Schmidbauer shall also observe all potential discharge locations on the perimeter of the Facility to determine if discharge of storm water is occurring from an area of industrial activity.

51.   During such wet weather visual observations, appropriately trained Schmidbauer employees shall monitor for the presence of visually observable oil sheens in storm water discharges and/or discolored or turbid storm water discharges.

52.   <u>Dry Weather Visual Observations</u>: In accordance with the current SWPPPs, appropriately trained Schmidbauer employees shall conduct weekly visual BMP inspections of the Facility, including during dry weather. Such inspections shall include driveways, outdoor storage areas, and all Industrial Activity Areas. All Designated Discharge Locations shall also be inspected for accumulation of dust, sediment, sand, grit, oily substances, oily sheens upon any standing water, and other materials associated with operations at the Facility. Such inspections shall further include observations of all storm water BMPs at the Facility to ensure that operational BMPs are being implemented, structural BMPs are in good condition or working order, and that BMPs have been effective in producing clean conditions at the Facility to the extent practicable (*e.g.*, an absence of significant oil stains on paved or unpaved surfaces, absence of metal debris or other debris on paved or unpaved surfaces, absence of oil, or metal or other debris or grit in storm water conveyance structures).

**C.   Compliance Monitoring**

53.   <u>Site Inspections</u>: Plaintiff and its representatives may conduct one site inspection per year at the Schmidbauer Facility during the life of this Consent Decree. The site inspections shall occur during normal business hours and Plaintiff shall provide Schmidbauer with 5-days notice. Where Plaintiff is unable to provide 5-days notice due to the unexpected nature of a storm event, Plaintiff shall provide Schmidbauer with as much advance notice as is possible but in no event less than forty-eight (48) hours notice.

54.   During the site inspections, Plaintiff and/or its representatives shall be allowed access to

the Facility's SWPPP, MIP, and other monitoring records, reports, and sampling data for the Schmidbauer Facility. During the site inspections, Plaintiff and/or its representatives may collect samples of discharges from the Facility. A certified California laboratory shall analyze storm water samples collected by Plaintiff and copies of the lab reports shall be provided to Schmidbauer within five (5) business days of receipt. At the request of Schmidbauer, the samples shall be split and one half provided to Schmidbauer so as to allow Schmidbauer to have their own certified California laboratory analyze the samples, in which case Schmidbauer shall provide the laboratory results to Plaintiff within fourteen (14) business days of receipt.

**D.    Cleaning, Maintenance, and Inspection Logs**

55.    During the life of this Consent Decree, Schmidbauer shall keep contemporaneous logs documenting the performance of cleaning, maintenance, and inspection activities performed pursuant to the Facility's SWPPP. The logs shall indicate the personnel who completed the cleaning, maintenance, or inspection activity and the date the activity was performed.). The logs shall be made available to Plaintiff at the time of any site inspection.

**E.    Reporting**

56.    During the life of this Consent Decree, Schmidbauer shall provide Plaintiff with a copy of all documents pertaining to the General Permit submitted to or received from the Regional Board or the State Board concerning the Facility, including all documents and reports submitted to the Regional Board as required by the General Permit. Schmidbauer shall also provide Plaintiff with a copy all documents relating to building permits or other approvals needed by the City of Eureka or other government entities that are required for Schmidbauer to implement any structural BMPs described Updated Plan, ERA Level 2 Action Plan, and any future ERA Level 1 Evaluation Plans required by this Consent Decree. Documents and reports sent by Schmidbauer to the Regional Board, State Board, or other local or state agencies related to structural BMPs shall be electronically mailed to Plaintiff contemporaneously with submission to the respective agency. Documents received by Schmidbauer from the Regional Board, State Board, and/or local or other state agencies shall be electronically mailed to

Plaintiff within three (3) business days of receipt.

57. Schmidbauer shall provide Plaintiff with a copy of its Annual Report on July 15 each year documenting measures taken by Schmidbauer to comply with the Decree and providing Plaintiff with summary tables of all storm water sample test results for the Facility, field notes documenting visual inspections at the Facility, and cleaning, maintenance, and inspection logs prepared pursuant to paragraph 55. Schmidbauer shall also provide Plaintiff with the monthly climate summaries from the NOAA site.

58. Schmidbauer shall contact Plaintiff to request an extension of the deadline, if necessary, to implement any structural BMPs requiring agency approval. Plaintiff's consent to Schmidbauer's requested extension shall not be unreasonably withheld.

59. When any Updated Plan, ERA Level 2 Action Plan, or Level 1 ERA Evaluation ("collectively Action Plans") is completed and approved by Plaintiff or finalized pursuant to Dispute Resolution, Schmidbauer shall revise its SWPPP and Monitoring Implementation Plan ("MIP") as applicable within thirty (30) days to reflect the changes required by the Action Plans. Schmidbauer shall notify Plaintiff in writing when the Action Plans have been completely implemented, which shall be no later than (2) months after the approval by Plaintiff or dispute resolution finalizing the Action Plans. Defendant shall implement any Action Plan approved pursuant to this paragraph as a requirement of the Consent Decree.

**VII. EMPLOYEE TRAINING**

60. By August 15, 2017, Schmidbauer shall modify as necessary and implement a training program, including any training materials needed for effective implementation of the training program, to ensure (1) that there are a sufficient number of employees delegated to achieve compliance with the Storm Water Permit and this Consent Decree, and (2) that these employees are properly trained to perform the required compliance activities ("Training Program"). At a minimum the Training Program shall familiarize all employees at the Facility with the requirements of the Storm Water Permit and this Consent Decree.

61. To the extent necessary, the Training Program shall be revised to require specific training

on the following topics for all personnel whose jobs include some aspect of responsibility for stormwater compliance:

    a.   Non-Storm Water Discharge Training: Schmidbauer shall train all employees on the Storm Water Permit's prohibition of non-storm water discharges, so that employees know what non-storm water discharges are, which can result from improper draining of automobile fluids, and how to detect them and prevent them;

    b.   BMP Training: Schmidbauer shall train designated employees on BMP implementation and maintenance to ensure that BMPs are implemented effectively to prevent the exposure of pollutants to storm water, to prevent the discharge of contaminated storm water, and to ensure the proper treatment of storm water at the Facility;

    c.   Sampling Training: Schmidbauer shall designate adequate number of employees necessary to collect storm water samples from each discharge location as required by this Consent Decree and/or the Storm Water Permit. The training shall include the proper sampling protocols, including chain of custody requirements, to ensure storm water samples are properly collected, stored, and submitted to a certified laboratory;

    d.   Visual Observation Training: Schmidbauer shall provide training to all individuals performing visual observations at the Facility pursuant to this Consent Decree and/or the Storm Water Permit.

62.   Training shall be provided on an annual basis, or as otherwise required to ensure compliance with the terms of this Consent Decree, by a private consultant or a representative of Schmidbauer who is familiar with the requirements of this Consent Decree and the Storm Water Permit. The training shall be repeated as necessary to ensure that covered employees are familiar with the requirements of this Consent Decree, the Storm Water Permit, and the Facility's SWPPP and MIP. All new personnel shall receive this training before assuming responsibilities for implementing the SWPPP and/or MIP.

63.   Schmidbauer shall maintain training records to document compliance with this section, and shall provide Plaintiff with a copy of these records within fourteen (14) days of receipt of a

written request. The Training Program shall be specified in the SWPPP.

## VIII.   STORM WATER POLLUTION PREVENTION AND MONITORING IMPLEMENTATION PLAN

64.   By August 15, 2017, Schmidbauer shall revise its SWPPP and its MIP to:

a.   Incorporate the requirements of the Storm Water Permit, and this Consent Decree, including but not limited to revisions to the SWPPP to specify performance of the measures referred to in PART V (STORM WATER QUALITY IMPROVEMENT MEASURES) subparts A through E.;

b.   Identify the positions responsible for compliance with each aspect of the Storm Water Permit and this Consent Decree;

c.   Describe all BMPs and how they will be operated and/or maintained;

d.   Denote all actions taken to control the deposition of wood waste saw dust, particulate matter and other pollutants at the Facility;

e.   Describe where and when storm samples are to be collected and include a checklist that must be used by trained Facility personnel when conducting the storm water sampling required under the Storm Water Permit and/or under this Consent Decree;

f.   Describe where and when visual inspections of the Facility are to be performed and include a visual inspection checklist that must be used by trained Facility personnel when conducting the visual observations required under the Storm Water Permit and/or under this Consent Decree; and

g.   Describe the type vehicle traffic at the Facility.

65.   Commenting on the SWPPP and MIP Revisions: Schmidbauer shall submit the revised SWPPP and MIP to Plaintiff for review and comment as soon as it is completed but in any event no later than the date specified herein. Plaintiff shall provide comments, if any, to Schmidbauer within twenty-four (24) days of receipt of the SWPPP and MIP. Schmidbauer shall incorporate Plaintiff's comments into the SWPPP and MIP or shall justify in writing why any comment is not incorporated within fourteen (14) days of receiving Plaintiff's comments.

66. <u>Additional Revisions to SWPPP and MIP</u>: Schmidbauer shall revise the SWPPP and MIP if there are any changes in the Facility's operations, including but not limited to changes to storm water discharge point(s) or changes or additions to the BMPs at the Facility resulting from any ERA 'Action Plan' that may be required under this Consent Decree. Schmidbauer shall submit any revised SWPPP and MIP to Plaintiff for review and comment within five (5) days of completion. Plaintiff shall provide comments, if any, to Schmidbauer within thirty (30) days of receipt of any revised SWPPP and MIP. Schmidbauer shall incorporate Plaintiff's comments into any revised SWPPP and MIP, or shall justify in writing why any comment is not incorporated within thirty (30) days of receiving comments.

## IX. MITIGATION, FEES, AND COSTS

67. <u>Supplemental Environmental Project (SEP) Funding</u>:  As mitigation of the violations alleged in Plaintiff's Notice and Complaint, Schmidbauer shall pay the sum of $25,000 to the Rose Foundation for Communities and the Environment ("Rose Foundation"). The SEP funds shall be spent exclusively on projects designed to advance environmental restoration (including environmental restoration work) whose purpose is the improvement water quality in Humboldt Bay). Within 30 days of the Effective Date, Schmidbauer shall tender this payment to the Rose Foundation for Communities and the Environment. The Rose Foundation shall provide the parties identified in Paragraph 77 below a report that sets forth the organizations receiving funds, a description of the project and its goals, and further itemizing the amounts provided to each organization.

68. <u>Reimbursement of Fees and Costs</u>:  Schmidbauer shall reimburse Plaintiff in the amount of $73,000 to help defray Plaintiff's investigation fees and costs, expert fees and costs, reasonable attorneys' fees, and all other costs incurred as a result of investigating the activities at the Facility, bringing these matters to Schmidbauer's attention, and negotiating a resolution of this action in the public interest. Such payment shall be made within fifteen (15) days of the Effective Date.

69. <u>Compliance Monitoring Funds</u>:  Schmidbauer shall reimburse ERF six thousand dollars

($6,000) per year for each of the years the Consent Decree is in effect for costs and fees associated with monitoring Schmidbauer's compliance with this Consent Decree. Monitoring activities include the authorized site inspection, review of water quality sampling reports, review of Action Plans and other documents submitted pursuant to this Decree, discussion or written communication with representatives of Schmidbauer concerning potential changes to compliance requirements, water quality sampling, informal dispute resolution, and other actions necessary to monitor and ensure Schmidbauer's compliance with this Decree. The compliance monitoring fund payment shall be made payable to Environmental Advocates Attorney Client Trust Account. The first installment shall be paid within fifteen (15) days of the Effective Date, and the remaining installments shall be paid on October 1st for each of the following years that the Consent Decree is in effect.

## X. STIPULATED PAYMENTS

70.    In the event Schmidbauer fails to submit to Plaintiff any document, report or other communication required under Paragraphs 29 (Updated Plan), 35 (Level 2 ERA Action Plan), 42 (ERA Level 1 Evaluation), 49 (stormwater sample results), 56 (communications with agencies), 57 (Annual Report), 59 (Plan implementation), 64 (initial SWPPP update), 66 (any future SWPPP updates) of this Agreement, for any report more than five (5) days late, Schmidbauer shall pay a late payment of Five Hundred Dollars ($500) per day commencing on the sixth (6th) day after the report due date and to accrue per day until the document, report, or communication is provided.

71.    In the event Schmidbauer fails to complete a measure of specific performance required by (a) the dates specified in Paragraphs 69 above, (b) the dates for implementation specified in the Updated Plan or ERA Level 2 Action Plan, or (c) the dates for implementation of BMPs specified in any future Level 1 ERA Evaluation Plans, Schmidbauer shall incur a late payment of Five Hundred Dollar ($500) per day commencing on the sixth (6th) day after the date by which the measure was to be completed or implemented to accrue per day until the measure is performed.

72.    If Schmidbauer fails to submit to any payments required under Paragraphs 67 through 71 of this Consent Decree within five days of the date due, Schmidbauer shall incur a Five Hundred Dollar ($500) per day late payment commencing on the sixth (6th) day after the payment due date to accrue until the stipulated payment is made.

73.    Beginning in the 2019-2020 Wet Season, Schmidbauer shall pay stipulated payments of $500 for each pollutant parameter that exceeds Tier Two levels in any sample taken from any discrete discharge point (except for zinc as noted in Table 1). Any storm water samples that Schmidbauer takes internally within the Facility (i.e., of storm water that has not left the Facility's premise) for the purpose of identifying site specific areas of pollutant generation as part of designing remedial measures for the Facility shall not be subject to the payment requirement of this paragraph.

74.    Any stipulated payments are pursuant to this Part shall be paid to the Rose Foundation for Communities and the Environment within forty-five (45) days of the event that precipitated the Stipulated Payment liability. Stipulated payments shall be used for projects designed to improve water quality in Humboldt Bay. Schmidbauer shall send Plaintiff notice of any such stipulated payments within seven (7) days of tendering such payments. The Rose Foundation shall provide the parties identified in Paragraph 77 below a report that sets forth the organizations receiving funds, a description of the project and its goals, and further itemizing the amounts provided to each organization.

**XI.    DISPUTE RESOLUTION AND ENFORCEMENT OF CONSENT DECREE**

75.    <u>Dispute Resolution Process</u>: If a dispute under this Consent Decree arises, or either Party believes that a breach of this Consent Decree has occurred, the Parties shall schedule a meet and confer within ten (10) calendar days of receiving written notification from the other Party of a request for a meeting to determine whether a violation has occurred and to develop a mutually agreed upon plan, including implementation dates, to resolve the violation. If the Parties meet and confer does not resolve the issue, the Parties will seek the services of a mutually acceptable mediator with experience in environmental disputes for non-binding

resolution of the dispute with Defendant to pay the costs of the mediation. If resolution with a mediator is not acceptable, either Party shall be entitled to all rights and remedies under the law, including bringing a motion before the District Court of California, Northern District, which shall retain jurisdiction over the Action for the limited purposes of enforcement of the terms of this Consent Decree. The Parties agree not to object to an expedited hearing schedule on any Dispute Resolution motion if one of the Parties requests one.

76.  <u>Litigation Costs and Fees</u>: Litigation costs and fees incurred in conducting meet and confer or otherwise addressing and/or resolving any dispute, including an alleged breach of this Consent Decree, shall be awarded in accord with the standard established by Section 505 of the Clean Water Act, 33 U.S.C. §1365 and case law interpreting that standard.

## XII.  NOTICES AND SUBMISSIONS

77.  Except as otherwise expressly provided in this Consent Decree, whenever under the terms of this Consent Decree notice is required to be given or a report or other document is required to be forwarded by one Party to another, it shall, to the extent feasible be sent to the following individuals as electronic computer files at the e-mail addresses specified below. If a given document cannot be e-mailed, it shall be mailed by U.S. Mail to the following addresses. Any change in the individuals designated by either Party must be made in writing to the other Parties.

As to Plaintiff:

Fredric Evenson
ECOLOGY LAW CENTER
P.O. Box 1000
Santa Cruz, CA 95061
Telephone: (831) 454-8216
Email: evenson@ecologylaw.com

Jodene Isaacs
Environmental Advocates
5135 Anza Street
San Francisco, California  94121
Email:  jisaacs@enviroadvocates.com

As to the Defendant:

Jan Greben
125 East De La Guerra, Suite 203
Santa Barbara, California, 93105
Email: jan@grebenlaw.com

Del Clark, Safety Manager
Schmidbauer Lumber, Inc.
1099 West Waterfront Drive
Eureka, California 95501
Email: delc@schmidbauerlumber.com

## XIII. PAYMENTS

78.   All payments to Plaintiff (other than payments of Supplemental Environmental Project funding pursuant to Paragraph 67 and Stipulated Payments pursuant to Part X shall be made by check made payable to Environmental Advocates Attorney Client Trust Account. Payments shall be sent via certified mail, return receipt requested, to the following address:

>   Environmental Advocates
>   5135 Anza Street
>   San Francisco, California 94121

79.   All Supplement Environmental Project funding pursuant to Paragraph 67 and Stipulated Payments pursuant to Part X shall be made by check payable to the Rose Foundation for Communities and the Environment. Such payments shall be sent via certified mail, return receipt requested, to the following address (with notice to the Plaintiff that such payments have been sent):

>   Tim Little
>   Rose Foundation for Communities and the Environment
>   1970 Broadway, Suite 600
>   Oakland, California  94612-2218

## XIV. MISCELLANEOUS PROVISIONS

80.   Execution in Counterparts: The Consent Decree may be executed in one or more counterparts which, taken together, shall be deemed to constitute one and the same document.

81.   Severability: In the event that any of the provisions of this Consent Decree is held by a

court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

82. <u>Construction</u>: The language in all parts of this Consent Decree, unless otherwise stated, shall be construed according to its plain and ordinary meaning.

83. <u>Integrated Consent Decree</u>: All agreements, covenants, representations and warranties, express or implied, oral or written, of the Parties concerning the subject matter of this Consent Decree are contained herein.

84. <u>Facsimile Signatures</u>: Signatures of the Parties transmitted by facsimile shall be deemed binding.

85. <u>Force Majeure</u>: No Party shall be considered to be in default in the performance of any of its obligations when a failure to perform is due to a "Force Majeure." A Force Majeure event is any act of God, war, fire, earthquake, flood, natural catastrophe, and restraint by court order or public authority. A Force Majeure event does not include normal inclement weather or inability to pay. Any Party seeking to rely upon this paragraph shall have the burden of establishing that it could not reasonably have been expected to avoid, and which by exercise of due diligence has been unable to overcome, the Force Majeure. The Parties shall exercise due diligence to resolve and remove any Force Majeure event.

86. The parties hereto enter into this Consent Decree, Order and Final Judgment and submit it to the Court for its approval and entry as a final judgment.

## XV. EFFECTIVE AND TERMINATION DATES

87. Within three (3) days of the final signature of the Parties, Plaintiff shall submit this executed Consent Decree to EPA and DOJ for a 45-day review and comment period pursuant to CWA section 505(c)(3) and 40 C.F.R. § 135.5. The Court shall not enter its judgment on consent until the expiration of this review and comment period. If EPA or DOJ requests or suggests revisions to this Consent Decree or objects to entry of this Consent Decree in the form presented, the Parties shall within ten (10) days meet and confer on whether to revise this Consent Decree in accord with the requested or suggested revisions provided by EPA or DOJ

and/or otherwise to accommodate EPA or DOJ's objections. If the Parties do not mutually agree to any such revisions or modifications, the Parties shall so notify the Court and request entry of the Consent Decree in the form drafted. If the Court objects to entry of this Consent Decree in the form presented, the Parties will attempt in good faith to agree to revisions of this Consent Decree necessary so that it is acceptable to the Court.

88.     The Effective Date of this Consent Decree shall be the last day for EPA and DOJ to comment on the Consent Decree, i.e., the 45th day following these agencies' receipt of the Consent Decree, or the date on which these agencies provide notice that they require no further review, whichever occurs earlier.

89.     This Consent Decree shall terminate five (5) years from the Effective Date provided that Schmidbauer has made all monetary payments owed under the Consent Decree and there is no pending Dispute Resolution proceeding pursuant to the provisions of Part XI (DISPUTE RESOLUTION). If Schmidbauer has not made all monetary payments owed under the Consent Decree or if there is a pending Dispute Resolution proceeding, the Consent Decree shall be extended until Schmidbauer has made all monetary payments owed under the Consent Decree and all pending Dispute Resolution proceedings have been resolved.

90.     Schmidbauer shall initiate termination by submitting certification to Plaintiff that it has satisfied the conditions of termination set forth in this Part. The Consent Decree shall automatically terminate thirty (30) days from the Plaintiff's receipt of this notice, unless Plaintiff provides written notice to Schmidbauer within these thirty (30) days that Plaintiff objects to the certification. If Plaintiff disagrees with Schmidbauer's certification, then the matter shall be subject to the Dispute Resolution provisions of Part XI (DISPUTE RESOLUTION).

IN WITNESS WHEREOF, the undersigned have executed this Consent Decree as of the date first set forth above.

**IT IS SO ORDERED:**

Date:_____

Hon. Judge Haywood S. Gilliam, Jr.
U.S. District Court Judge,
Northern District of California

APPROVED AS TO FORM:

ENVIRONMENTAL ADVOCATES

Dated: _June  1_, 2017          By: _____
                                     Jodene Isaacs
                                     Attorney for Plaintiff

GREBEN AND ASSOCIATES

Dated: _____2017         By: _____
                                     Jan Greben
                                     Attorney for Defendant

APPROVED AS TO CONTENT:

Dated: ____6 · 1 ·__2017        By: _____
                                     James Lamport
                                     Ecological Rights Foundation

Dated: _____2017         By: _____
                                     Frank Schmidbauer
                                     Schmidbauer Lumber, Inc.

**IT IS SO ORDERED:**

Date:_____
_____
Hon. Judge Haywood S. Gilliam, Jr.
U.S. District Court Judge,
Northern District of California

APPROVED AS TO FORM:

ENVIRONMENTAL ADVOCATES

Dated: _____2017        By: _____
                                      Jodene Isaacs
                                      Attorney for Plaintiff

GREBEN AND ASSOCIATES

Dated: _6/1_____2017        By: _____
                                      Jan Greben
                                      Attorney for Defendant

APPROVED AS TO CONTENT:

Dated: ___ℓ_____2017          By: _____
                                      James Lamport
                                      Ecological Rights Foundation

Dated: _6/01/_____2017          By: _____
                                      Frank Schmidbauer
                                      Schmidbauer Lumber, Inc.

**Table 1. Tier One and Two Levels for Facility Discharges**

| Contaminant | Tier One Limit/Annual NAL | Tier Two Limit/Instantaneous Maximum NAL or CTR value |
|---|---|---|
| Oil and grease | 15 mg/l | 25 mg/L |
| Total Suspended Solids | 100 mg/l | 400 mg/L |
| Chemical Oxygen Demand | 120 mg/l | 120 mg/L |
| | | |
| Total Recoverable Zinc | 0.26 mg/l | 0.09 mg/L[a] |
| pH | -- | 6-9 units |

[a.] Schmidbauer will undertake best efforts to address source(s) of zinc that contribute to its presence above the identified CTR value of 0.09 mg//L. However, the occurrence of zinc above the Tier 2 value will not trigger payments as identified in Paragraph 73.

Ecological Rights Foundation v. Schmidbauer Lumber, Inc.

| Reference Paragraph in Consent Decree | Description | Due Date |
|---|---|---|
| 15 | Site Mapping | 8/15/17 |
| 16 | Discharge points | 8/15/17 |
| 20 | Deploy media filters | 8/15/17 |
| 21 | Perimeter Inspection | 8/15/17 |
| 22 | NOAA data | 8/15/17 |
| 25 | Cover storm drains | 7/15/17 |
| 26 | Site Housekeeping Plan | 8/15/17 |
| 28 | ERF Review to SLI | 9/8/17 |
| 26 | Updated SWPPP - SLI to ERF | 8/15/17 |
| 28 | ERF (*SWPPP)* Review to SLI | 9/8/17 |
| 28 | Revised Updated SWPPP | 9/22/17 |
| 29 | Updated ERA Level 1 Report | 8/15/17 |
| 33 | Updated Plan Implementation | 11/1/17 |
| 35 | ERA Level 2 Action Plan | 9/1/18 |
| 37 | ERF Review to SLI | 9/30/18 |
| 37 | Update ERA Level 2 Report | 10/15/18 |
| 38 | Implement Level 2 | 7/31/19 |
| 40 | ERA Level 1 (*EVALUATION Plan* )- Implement | 11/15/18 |
| 42 | Submit ERA Level 1 Plan | 10/1/18 |
| 43 | ERF Review to SLI | 10/31/18 |
| 56 | All submittals to ERF | Contemporaneous with submittal to agency(s) |
| 56 | Received by SLI from agencies | Within 3 business days of reciept by SLI |
| 57 | Annual report, w/logs, notes, etc. | July 15th |
| 59 | Notification of implementation | 2 Months after Approval by ERF |
| 60 | Employee training | 8/15/17 |
| 64 | Revised SWPPP/MIP | 8/15/17 |
| 65 | ERF comments to SLI - SWPPP/MIP | 9/8/17 |
| 65 | SLI to incorporate or advise why not | 9/22/17 |
| 66 | Revisions to SWPPP/MIP | 5 Days of Changes |
| 66 | ERF to SLI - comments on changes | 30 Days of Reciept |
| 67 | SEP Funding | Within 30 days of Effective Date |
| 68 | Fees and costs | Within 15 days of Effective Date |
| 69 | Annual oversight fee | Within 15 days of Effective Date and Oct. 1, following years |